Argued and submitted September 14, 1984, reversed April 3, 1985

STATE OF OREGON,
*Respondent,*

*v.*

EASTMAN,
*Respondent,*
DANIELSON et al,
*Appellants.*

(CC 83-600; CA A30856)

697 P2d 995

James W. Young, Forest Grove, argued the cause for appellants. With him on the briefs was Bump, Young and Walker, Forest Grove.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General.

Kenneth S. Eiler, Seaside, waived appearance for respondent Clatsop County.

Before Joseph, Chief Judge, and Warden and Newman, Judges.

WARDEN, J.

**WARDEN, J.**

Defendants Danielson appeal from a judgment that declared the state the rightful owner of a motor home that the Danielsons' debtor had forfeited to the state in an earlier criminal proceeding in Clatsop County. We reverse.

On August 2, 1982, the state charged David LaTec in Clatsop County with the unlawful possession of controlled substances. On August 3, the Department of State Police (Department) notified LaTec that his motor home and automobile had been seized and that the police would seek forfeiture of the vehicles under ORS 167.247(2)[1] for unlawful transportation of controlled substances. Also on August 3, the Danielsons filed a complaint against LaTec in Washington County for the return of a $20,000 loan fee deposit. They obtained provisional process, pursuant to which a writ of attachment issued on August 3, directing the sheriff of Clatsop County (a nominal defendant here) to seize LaTec's motor home. The Danielsons served the writ on LaTec personally and posted the motor home with a notice of the writ on August 13.

After plea negotiations with the district attorney, LaTec pled guilty to possession of marijuana in Clatsop County. The court accepted his "petition to enter plea of guilty" on August 30, 1982. The only reference to the motor home in the petition was the statement that "I will not contest the forfeiture of my motor home by the Oregon State Police."

LaTec was sentenced on September 1, 1982. The sentence directed forfeiture of the motor home to the state. The Department then notified the Clatsop County Sheriff on September 3, 1982, that it claimed the motor home for official use pursuant to ORS 471.665(3). The Danielsons took judgment against LaTec in Washington County on January 31, 1983, and on March 11, 1983, that court issued a writ of

---

[1] ORS 167.247(2) states:

"Any boat, vehicle or other conveyance used by or with the knowledge of the owner, operator or person in charge thereof for the unlawful transportation or concealment of controlled substances shall be forfeited to the state in the same manner and with like effect as provided in ORS 471.660 and 471.665. However, a conveyance is not subject to forfeiture for a violation of ORS 475.992(3)."

execution directing the Clatsop County Sheriff to sell LaTec's personal property to satisfy the judgment.

The state then brought this action for a declaration of its exclusive ownership of the motor home. The Danielsons, in their affirmative defense, alleged that the forfeiture was invalid, because there was no admission by LaTec that the motor home was used to transport or conceal controlled substances or a stipulation that it was so used. In their cross-claim against the sheriff, the Danielsons sought a declaration that their attachment lien was prior in time and right to any interest claimed by the state. They contended that the LaTec case record lacks findings of fact that would warrant forfeiture and that their lien survived, because the state had failed to perfect its title. *See State v. Crampton,* 30 Or App 779, 785, 568 P2d 680 (1977), *rev den* 281 Or 99 (1978).

The Danielsons assign as error the trial court's declaration in favor of the state and dismissal of their cross-claim. They also assign as error the trial court's ruling that they lacked standing to challenge the state's claim.

The trial court erred on the issue of standing, and the state does not attempt to defend its ruling. We accept the Danielsons' argument that ORS 471.665(3) gives them standing to participate in the declaratory judgment proceeding. The statute requires the sheriff to ascertain and pay all liens on the seized vehicle before releasing it to the seizing law enforcement agency. Because the state stipulated to the validity, though not to the priority, of the Danielsons' lien, they are entitled to participate in any judicial proceeding that affects the sheriff's duties under ORS 471.665(3).[2]

---

[2] We do not mean to imply that the Danielsons may have been necessary parties to, or could have intervened in, LaTec's sentencing hearing. Notwithstanding its conclusion that forfeiture proceedings are civil in nature, the Supreme Court in *State v. Curran,* 291 Or 119, 628 P2d 1198 (1981), held that the determination of whether forfeiture is warranted may be made, as it was here, by the court that tried the criminal action and "without the necessity of resort by the district attorney to a new and separate cause either under ORS 30.410 or 30.450, pertaining to recovery of fines and forfeitures, or by way of an *in rem* proceeding." 291 Or at 126. We assume, therefore, that the Criminal Procedure Code continues to apply when "the court having jurisdiction to try the criminal action [proceeds] to the matter of exercise of authority to decree a forfeiture." 291 Or at 126. The Criminal Procedure Code does not, of course, require joinder of a person who "claims an interest relating to the subject of the action * * *," ORCP 29A, nor does it grant third parties the right to intervene provided by ORCP 33B.

█ The trial court also erred in ruling that the state had perfected its title to the motor home. The Supreme Court held in *State v. Curran, supra,* n 2, 291 Or at 132:

> "The factual issues which must be decided in the state's favor to warrant forfeiture of a vehicle are that (1) the vehicle was employed in the unlawful transportation or concealment of controlled substances and that (2) such use was by or with the knowledge of the owner of the vehicle."

In sentencing LaTec, the court did not make findings on those factual issues. The only reference to the forfeiture in the sentence order is: "IT IS FURTHER ORDERED that the defendant shall forfeit the 1978 Travel Queen HC motor home * * *." A partial transcript of the sentencing proceedings suggests, but does not establish, that the failure to incorporate the necessary findings into the judgment was an oversight:

> "MR. GERTTULA: There also is, statutorily, a — the ability of the Court to find that Mr. Latec was in charge or in possession of a vehicle within the confines of Clatsop County; that he knew at that time that he was transporting a controlled substance; and therefore order in the sentence order the forfeiture of that vehicle. Since Mr. Latec has already agreed not to contest that forfeiture, I'd ask that that be made a part of the sentence order.
>
> "THE COURT: I see a reference to that in this petition. I'll make that — you want a formal finding to that effect and made a part of the order?
>
> "MR. GERTTULA: (Nods affirmatively.)
>
> "THE COURT: All right, that's fine."

The sentencing judge may have agreed to incorporate in the judgment the findings that *Curran* requires, but the agreement, for whatever reason, was not carried out.

The state argues, first, that the sentencing judge's statement, "All right, that's fine," in response to the undisputed assertions of the district attorney, is in itself a specific finding of fact sufficient to satisfy the requirements of *State v. Curran, supra,* n 2. Although an informal statement of that sort might serve as a finding of fact for some purposes, it is not sufficiently clear and specific to support a forfeiture in this instance. *See* ORS 471.665(1); *Barger v. Taylor,* 30 Or 228, 235, 42 P 615, 47 P 618 (1895).

Second, the state argues that the record contains evidence sufficient to satisfy the requirements of *State v. Curran, supra,* n 2; *Barger v. Taylor, supra;* and ORS 471.665(1), despite the sentencing judge's failure to make corresponding findings of fact. The "evidence" to which the state refers consists of the undisputed assertions of the district attorney quoted above and statements in two motions that LaTec had filed before the sentencing hearing. The state points out that the Supreme Court has tacitly approved a trial court's reliance on the undisputed assertions of counsel in proceedings to enter guilty pleas. *See State v. Ridder,* 185 Or 134, 202 P2d 482 (1949). This case differs, however, from the "common practice" discussed in *Ridder.* Here LaTec (and, presumably, the district attorney) knew that the Danielsons' lien had attached to the motor home and that, as a practical matter, LaTec had little or no interest in the motor home left to lose. Under those circumstances, LaTec's failure to dispute the district attorney's assertions carries no evidentiary weight. It is not the "clear and convincing evidence" or "clear and satisfactory proof" that ORS 471.665(1) and *Barger v. Taylor, supra,* require for support of a penalty of forfeiture.[3]

■ The same reasoning applies to the statement in LaTec's motion to suppress marijuana that "marijuana [was] seized in the search of defendant's motor home * * *" and to LaTec's failure to move that the confiscation of his motor home be set aside.[4] The normal safeguards of the adversary process were vitiated by LaTec's lack of interest in the motor home and by the fact that the sentencing judge accepted LaTec's guilty plea before scheduling hearings on the motions and, apparently, without considering them. Even if the motions to suppress "the marijuana seized in the search of Defendants' motorhome," signed and filed by an attorney

---

[3] We reach this conclusion without deciding that it was "error" for the sentencing judge to rely on the district attorney's undisputed assertions. His reliance was justified, because neither attorney brought LaTec's lack of any real interest in the motor home to his attention. Although the omission would prevent LaTec from successfully appealing the forfeiture provision of his sentence, the Danielsons should not be bound by LaTec's failure to identify and preserve the error.

[4] The state argues that there is evidentiary significance in the fact that LaTec moved to set aside the confiscation of his car on the ground that the police had found no controlled substances in the car, but made no similar motion with respect to the motor home. That argument overlooks the facts that LaTec was going to lose the motor home in any event but might be able to save the car.

without accompanying affidavits, can be taken as substantive evidence that marijuana was found in the motor home, it does not necessarily mean that the motor home was "used by or with the knowledge of the owner * * * for the unlawful transportation or concealment of controlled substances * * *." ORS 167.247(2). *See State v. Curran, supra,* n 2.

Finally, the state argues that we must assume that the sentencing judge decided the facts in a manner consistent with his ultimate conclusion. *See Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). According to *State v. Hansen,* 295 Or 78, 82, n 2, 664 P2d 1095 (1983),

> "in reviewing trial court rulings on motions to suppress, [appellate courts follow] the rule of *Ball v. Gladden, supra,* that if express findings of historical facts are not made, we will 'presume' that the historical facts were decided in a manner consistent with the ultimate conclusion of the trial court judge if there is evidence from which the facts could be so found."

The rule of *Ball v. Gladden* does not assist the state in this case, because there was no "evidence from which the facts could be so found." In *Ball* and *Hansen* the court reviewed the testimony to determine whether there was evidence to support the findings that it presumed the trial court to have made. There is no testimony to review in this case, because there was no trial or evidentiary hearing to support the forfeiture. The state might, nevertheless, have gotten evidence into the record by way of affidavit or stipulation of fact, but it did not, and none of the arguably relevant information that became part of the sentencing record may be granted evidentiary significance.

We conclude that the trial court's decision must be reversed. This case is unusual in that, although we reverse for reasons connected with the failure of a lower court to make the findings needed to support its decision, we do not remand for further findings. The proceeding in which the court failed to make findings is not the proceeding being reviewed here. That anomaly results ultimately from the rule that prevents lienors from participating in the forfeiture proceeding. *See* n 2, *supra.* If the Danielsons had had the right to participate in and appeal from the proceeding in which the forfeiture was ordered, and had participated, we could have remanded for the findings required by *State v. Curran, supra,* n 2. Because this

appeal is from the judgment in a different proceeding, we cannot remand.

Reversed.